# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DESHAWN HOWARD,

        Petitioner,                        Case Number: 2:09-CV-11617

v.                                          HON. LAWRENCE P. ZATKOFF

DEBRA SCUTT,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY

Petitioner Deshawn Howard filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner, currently in the custody of the Michigan Department of Corrections, challenges his convictions for second-degree murder, two counts of armed robbery, assault with intent to murder, and felony firearm. For the reasons discussed below, the Court denies the petition.

### I. Facts

Petitioner's convictions arise from two incidents occurring in Detroit, late in the evening of October 25, 2005, and into the early morning hours of October 26, 2005. The first incident involved Clinton Draines, who was robbed and shot on Webb Street. He survived the shooting. The victim of the second incident, Damon Borden, was robbed and shot on Seward Street. He died from his wounds.

Draines testified that, on the evening of October 25, 2005, he was walking home from a corner gas station, when he saw someone who warned him of two men on the street who looked suspicious. Shortly after the warning, he was confronted by two armed men, one carrying a

handgun, the other a long gun. One of the men asked him if he was "Junior," his nickname. Draines denied being Junior and ran. The men shot at Draines, who was struck several times. The two men approached him and took his coat, keys, phone, wallet, glasses and a few dollars. The men then left. Draines testified that he had never seen the men before.

Detroit police officer Kelly Knox responded to the shooting. She interviewed witnesses, one of whom, Thomas McMichael, told her he had seen the two gunmen enter a vehicle that looked like a dark-colored Cadillac. Officer Kelly testified that seven spent shell casings were recovered from the scene.

Antonio Norwood testified that, sometime after midnight on October 26, 2005, he looked out his apartment window on Seward Street and saw two men fighting with Damon Borden. One of the men fired three gunshots at Borden and then they both fled. Norwood testified that he then saw a dark-colored Cadillac leaving the area. The medical examiner testified that Borden died from four gunshot wounds.

Police Officer Lori Briggs testified that two spent shell casings were found at the scene. An evidence technician testified that the two shell casings found on Seward and the seven shell-casings found on Webb were all fired from the same weapon.

Police Officer Jeremy Waters testified that he responded to the report of a shooting on Seward Street at approximately 12:10 a.m. Approximately one-half to one hour later, while detectives were interviewing witnesses, a green Cadillac was driven up and down Seward. Officer Waters was told to make a traffic stop. Petitioner was driving the vehicle and, because he did not have an operator's license, he was arrested.

After being informed of his rights, Petitioner told officers that he had loaned his vehicle to

two friends, "Jay" and "L.J." that evening and that they had returned it to him at 12:45 a.m. He stated that he had been driving down Seward because he had heard that Borden had been killed. Subsequently, Petitioner gave additional statements to the police admitting that he had been driving his vehicle that evening. He denied having knowledge of Jay and L.J.'s plans that evening. He stated that he dropped Jay and L.J. on Tuxedo Street, near Webb, he heard several gunshots, and then they returned to the vehicle. When they returned, Petitioner could see a rifle protruding from the bottom of Jay's jacket.

Jonathan Elliot testified that he was known as "Jay" and that he was with Petitioner on the night of the shootings. He, Joseph Holloway (known as L.J.), and Petitioner were driving around looking for Petitioner's girlfriend's brother because he had gotten into an altercation with Petitioner. Petitioner asked Elliot to bring some guns with him. Elliot brought a .38 special and L.J. brought an AK-47. Petitioner brought a 9 mm handgun, but did not have any bullets. As they were driving around, they saw Draines. Petitioner said he knew Draines to be a drug dealer and they should rob him. Elliott and Holloway exited the car and waited for Draines to exit a gas station. When Draines saw them, he started to run. They fired shots at him. Draines fell to the ground. Holloway went through his pockets, obtaining some money and drugs.

Elliott testified that, after returning to his home, and going to a liquor store, Petitioner mentioned that he knew someone on Seward that they needed to rob. They drove to Seward and Petitioner pointed out Borden, who was known to him as "Slow." Elliott and Holloway told Borden to get on the ground. Holloway went through his pockets, taking money and drugs. Elliott then shot Borden because he had seen their faces. Elliott was arrested two days later and his house was searched. The police found Draines' jacket, wallet, and a .38 special. Elliott testified pursuant to

3

a plea agreement. He pleaded guilty to second-degree murder, armed robbery, and felony firearm, with a sentence agreement of 35 to 50 years for the murder, 10 to 20 years for the robbery, and two years for the felony-firearm conviction.

James Holloway also testified pursuant to a plea agreement. He pleaded guilty to second-degree murder and armed robbery, with a sentence agreement of twenty to thirty years for the murder, and ten to twenty years for the armed robbery. His testimony was generally consistent with that given by Elliott.

Petitioner did not testify in his own defense.

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, two counts of armed robbery, assault with intent to commit murder, and possession of a firearm during the commission of a felony. On June 26, 2006, he was sentenced to 30 to 60 years' imprisonment for the second-degree murder conviction, 10 to 40 years' imprisonment for each armed robbery conviction, and 20 to 50 years' imprisonment for the assault with intent to commit murder conviction, all to be served concurrently with one another and consecutively to two years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

> I.  The trial court's refusal to give the requested missing-witness instruction as found in CJI2d, although the court found that due-diligence had not been exercised as to two *res gestae* witnesses, denied Mr. Howard of his state and federal constitutional right to a fair trial by a properly-instructed jury, confrontation, and due process right to defense against the charges.
>
> II. The trial court's denial of a motion for mistrial was an abuse of discretion and denied Mr. Howard of his state and federal constitutional rights to a fair trial, where the

        officer-in-charge of the case improperly and in violation of a ruling on a motion *in limine*, interjected that he was supposed to take Mr. Howard for a polygraph.

    III.    Mr. Howard was denied his Sixth Amendment right to a fair trial and his Fourteenth Amendment rights of a fair trial and due process of law through the cumulative effect of the improper argument of the prosecutor.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Howard*, No. 272248 (Mich. Ct. App. Dec. 4, 2007).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Howard*, No. 135661 (Mich. Apr. 28, 2008).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims raised on direct review in state court.

### III. Discussion

### A. Standard of Review

The petitioner's claims are reviewed against the standards established by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (*quoting Williams*, 529 U.S. at 413). However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 789 (2011), *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87 (internal quotation omitted).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the

state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams,* 529 U.S. at 412. Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007), *citing Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. *See* 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### B. Missing Witness Instruction

In his first habeas claim, Petitioner argues that he was denied his right to a properly-instructed jury when the trial court denied his request for a missing witness instruction. The prosecution failed to procure the attendance of two *res gestae* witnesses, Thomas McMichael and Tony Gibbons. The trial court held that the prosecution failed to exercise due diligence in obtaining the missing witnesses' presence at trial. Nevertheless, the trial court declined to give a missing witness instruction. McMichael was present and testified at the preliminary examination; Gibbons did not. The prosecution sought admission of the preliminary examination transcript. Concluding that the transcript contained information both harmful and helpful to the defense, the trial court

allowed defense counsel to decide whether to admit the preliminary examination testimony. Defense counsel did not want the transcript admitted and it was not. Gibbons, whose testimony had not been preserved, was stricken from the prosecution's witness list.

Generally, claims of erroneous jury instructions are not cognizable in federal habeas review unless the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). It is not enough to show that an instruction was incorrect under state law. *McGuire*, 502 U.S. at 71-72. The instruction "may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Id.* at 147. "To warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Doan v. Carter*, 548 F.3d 449, 455 (6th Cir.2008) (*quoting Austin v. Bell*, 126 F.3d 843, 846-47 (6th Cir.1997) (internal quotation marks omitted)).

Petitioner's claim that the trial court violated his constitutional rights by refusing to give a missing witness instruction "finds no basis in federal precedent." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 821 (E.D. Mich. 2010). "[N]o Supreme Court case has clearly established that a due process violation results from the failure to give such an instruction." *Id.* at 821-22. Therefore, habeas relief cannot be predicated on this claim.

To the extent Petitioner claims that the failure to produce these witnesses violated his right of confrontation, this claim is also meritless. The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). However, federal law does not

require the production of *res gestae* witnesses. *Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F.2d 192, 1988 WL 87710, * 2 (6th Cir. Aug. 24, 1988) (*citing United States v. Bryant*, 461 F.2d 912, 916 (6th Cir.1972)). In this case, there is no basis for believing that the missing witnesses would have exculpated Petitioner. Additionally, at the hearing to make a due diligence determination, the trial court offered to adjourn the trial to provide the parties another opportunity to locate the missing witnesses. The defense declined an adjournment. Thus, the Court concludes that Petitioner was not denied his right of confrontation.

### C. Denial of Motion for Mistrial

Second, Petitioner argues that the trial court abused its discretion in denying his motion for mistrial after the officer in charge, Matthew Gnatek, referenced a polygraph examination during his direct examination. The exchange at issue proceeded as follows:

Prosecutor: At this point you're aware that Deshawn Howard is booked at the precinct.

Gnatek: That's correct.

Prosecutor: Booked under that name.

Gnatek: Yes.

Prosecutor: Identified under that name.

Gnatek: I had some prior contact with him. Earlier that day I was supposed to take him for a polygraph.

Tr., 6/6/2006, at 257.

Following Gnatek's response, a brief bench conference was held. The trial court then instructed the jury to disregard the last answer.

9

> The Michigan Court of Appeals rejected Petitioner's claim, stating:
>
> Based on the context of Sergeant Gnatek's statement, it appears that he referenced the polygraph test inadvertently. After the reference was made, defense counsel immediately moved to strike the reference from the record. The court granted the motion to strike and instructed the jury to disregard Sergeant Gnatek's answer. Sergeant Gnatek did not mention the polygraph again, and it appears that no one else mentioned the polygraph. Additionally, the statement did not address whether a polygraph was ever actually administered, or if so what the results were; it only showed that Sergeant Gnatek was supposed to take defendant for a polygraph. Furthermore, during jury instructions the court instructed the jury "not to speculate about whether [Petitioner] had such polygraph examination." This Court has previously found that "not every instance of mention before a jury of some inappropriate subject matter warrants a mistrial. Specifically, an unresponsive, volunteered answer to a proper question is not grounds for the granting of a mistrial." *People v. Griffin*, 235 Mich. App. 27, 36; 597 N.W.2d 176 (1999), *overruled in part on other grounds* People v. Thompson, 477 Mich. 146; 730 N.W.2d 708 (2007) (internal quotations omitted). While answering the prosecutor's question, Sergeant Gnatek referenced the polygraph in context to the line of questioning. The mention of the polygraph was a volunteered response to a proper question and such "brief incidental mention did not warrant a mistrial." *Griffin*, *supra*, p 37. . . . [W]e hold that the trial court did not abuse its discretion in denying [Petitioner]'s request for a mistrial.

*Howard*, slip op. at 3.

In *Maldonado v. Wilson*, 416 F.3d 470, 476 (6th Cir. 2005), the Sixth Circuit Court of Appeals affirmed the denial of a habeas petition raising, *inter alia*, a claim that the petitioner's right to a fair trial was violated when testimony regarding a witness's truth test was admitted. In *Maldonado*, a police officer testified that a prosecution witness gave several conflicting stories to police regarding the defendant's involvement in the murder. The police officer testified that he believed the witness's third statement which incriminated defendant because the witness "was tested." *Id.* at 474. The Sixth Circuit noted that "[t]he Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments." *Id.* at 477.

10

Because no Supreme Court precedent requires the exclusion of testimony about truth tests, the Sixth Circuit held that the state court's decision holding that admission of truth test testimony did not violate the defendant's due process rights was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

Similarly, in this case, the Michigan Court of Appeals' decision cannot be said to be contrary to or an unreasonable application of clearly established Supreme Court precedent where no Supreme Court precedent exists requiring the exclusion of such testimony. Moreover, following reference to the polygraph examination, the prosecutor immediately proceeded with a different line of questioning and the jury was not informed of the polygraph examination results. In addition, the trial court's jury instruction to disregard the brief reference to the polygraph examination resolved any potential trial problems. "A jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

### D. Alleged Prosecutorial Misconduct

Finally, Petitioner argues that he was denied a fair trial by the cumulative effect of improper statements made by the prosecutor. Respondent argues that this claim is procedurally defaulted.

A claim may be procedurally defaulted and therefore barred from federal habeas review if the petitioner fails to comply with a state procedural rule and the state court declines to address the claim based upon that noncompliance. *Murphy v. Ohio*, 551 F.3d 485, 501 (6th Cir. 2009). In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit set forth four factors to consider in determining whether a petitioner has procedurally defaulted a claim:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural

11

> forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. [Fourth,] the petitioner must demonstrate under [ *Wainwright v.*] *Sykes*, [433 U.S. 72, 97 S.Ct. 2497 (1977)] that there was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Id.* at 138.

"Michigan's contemporaneous-objection rule requires that defendants make timely and specific objections at trial in order to preserve claims for appellate review." *Wallace v. Ludwick*, No. 08-11747, 2009 WL 2840500, at *3 (E.D. Mich. 2009) (citing *People v. Carines*, 460 Mich. 750, 597 N.W.2d 130, 137-42 (1999); *People v. Grant*, 445 Mich. 535, 520 N.W.2d 123, 128 (1994)). This rule, an adequate and independent state procedural rule, was relied upon by the state court in this case, which also conducted plain error review of the claim. A state appellate court's plain-error review of a procedurally defaulted claim does not waive the procedural default. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir.2006). Therefore, this claim is procedurally defaulted unless Petitioner can show cause and prejudice to excuse the default, however, Petitioner has failed even to assert cause and prejudice. He nonetheless can overcome procedural default by demonstrating "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. *Schlup v. Delo*, 513 U.S. 298, 321 (1995). Petitioner must assert a constitutional error along with a claim of innocence. To make a showing of actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt." *Id.* at 327.

Petitioner fails to present new, reliable evidence in light of which no reasonable juror would have found him guilty. Therefore, Petitioner's claim is procedurally barred.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted). In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition fails to state a claim upon which habeas corpus relief should be granted. Therefore, the Court will deny a certificate of appealability.

## V. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED**.

**IT IS SO ORDERED.**

                                      S/Lawrence P. Zatkoff
                                      LAWRENCE P. ZATKOFF
                                      UNITED STATES DISTRICT JUDGE

Dated: February 16, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 16, 2011.

                                      S/Marie E. Verlinde
                                      Case Manager
                                      (810) 984-3290